1

**THE HONORABLE THOMAS S. ZILLY**

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

9

10

11

NATIONAL FLOOD SERVICES, INC., a
Delaware corporation, and FISERV, INC., a
Wisconsin Corporation,

12

NO.  C05-1350Z

13

Plaintiffs,

14

v.

15

TORRENT TECHNOLOGIES, INC., a
Delaware corporation, TRAVIS PINE and
SUSANNA PINE, and their marital community;
THERESA N. JOHNSTON and RALPH
JOHNSTON, and their marital community,

16

17

18

Defendants.

19

**DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

Noted on Motion Calendar:
January 6, 2006

***ORAL ARGUMENT REQUESTED***

20

21

22

23

24

25

26

27

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(No. C05-1350Z)

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................1

II. STATEMENT OF FACTS ...............................................................2

    A. Plaintiffs. ...........................................................................2

        1. Fiserv, Inc. .............................................................2

        2. National Flood Services, Inc. .................................3

    B. Defendants. .......................................................................4

        1. Torrent Technologies, Inc. ....................................4

        2. Travis Pine. ...........................................................4

        3. Theresa Johnston. ................................................4

    C. The Agreements in Restraint of Trade. .............................5

        1. The Non-Compete Agreement. .............................5

        2. The Confidential Information and Development Agreement. ..........5

III. AUTHORITY AND ARGUMENT ...................................................6

    A. Summary Judgment. ..........................................................6

    B. The Fiserv Non-Compete Agreement is Unreasonable and Unenforceable under Applicable Wisconsin Law. ........................6

        1. Section 4(d)(i) of the Non-Compete is facially overbroad. ..............13

        2. Section 4(d)(ii) of the Non-Compete is facially overbroad. ..............15

        3. Section 4(d)(iv) of the Non-Compete is facially overbroad. ..............18

    C. The Confidential Information and Development Agreement is Unreasonable and Unenforceable under Applicable Montana Law. ..............19

IV. CONCLUSION................................................................................24

SAVITT & BRUCE LLP
1325 Fourth Avenue Suite 1410
Seattle, Washington 98101-2509
(206) 749-0500

TABLE OF CONTENTS - i

# TABLE OF AUTHORITIES

**Cases**

*Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 109 S.Ct. 2166 (1989)..................................................................................................................23

*Daniels v. Thomas, Dean & Hoskins, Inc.*, 246 Mont. 125, 804 P.2d 359 (Mont. 1990)......................................................................................................21

*Equity Enterprises, Inc. v. Milosch*, 247 Wis.2d 172 (Wis. Ct. App. 2001) .................. passim

*Farm Credit Services of North Central Wisconsin, ACA v. Wysocki*, 243 Wis.2d 305, 627 N.W.2d 444 (Wis. 2001)................................................. passim

*Hayes Benefits Group of Wisconsin, LLC v. Palmer & Cay of Wisconsin, LLC*, 279 Wis.2d 517, 693 N.W.2d 146 (Wis. Ct. App. 2005) ......................................12

*Heyde Cos., Inc. v. Dove Healthcare, LLC*, 258 Wis.2d 28, 654 N.W.2d 830 (Wis. 2002) ......................................................................................................18

*Interstate Sealant & Concrete, Inc. v. Schlueter*, 273 Wis.2d 785, 680 N.W.2d 832 (Wis. Ct. App. 2004) ................................................................................12

*JT Packard & Assocs., Inc. v. Smith*, 2005 U.S.Dist. LEXIS 7658 (W.D.Wis. April 25, 2005) .....................................................................................................8

*Montana Mountain Prods. v. Curl*, 327 Mont. 7, 112 P.3d 979 (Mont. 2005) ......................21

*Mulcahy v. Farmers Ins. Co.*, 152 Wn.2d 92, 95 P.3d 313 (2004)..........................................19

*Mutual Service Cas. Ins. Co. v. Brass*, 242 Wis.2d 733, 625 N.W. 2d 648 (Wis. Ct. App. 2001) ....................................................................................... passim

*NBZ Inc. v. Pilarski*, 185 Wis.2d 827, 520 N.W.2d 93 (Wis. Ct. App. 1994) ..........................7

*O'Neill v. Ferraro*, 182 Mont. 214, 596 P.2d 197 (Mont. 1979) ...........................................21

*Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151 (9th Cir. 1996)...................................19

*Rollins Burdick Hunter, Inc. v. Hamilton*, 101 Wis.2d 460, 304 N.W.2d 752 (Wis. 1981) ...............................................................................................12, 13

SAVITT & BRUCE LLP
1325 Fourth Avenue Suite 1410
Seattle, Washington 98101-2509
(206) 749-0500

*State Medical Oxygen and Supply, Inc. v. American Medical Oxygen Co.*, 240 Mont. 70, 782 P.2d 1272 (Mont. 1989) ............................................................21

*Streiff v. American Family Mut. Ins. Co.*, 118 Wis.2d 602, 348 N.W.2d 505 (Wis. 1984) ..............................................................................................7, 8

*Wausau Medical Center, S.C. v. Asplund*, 182 Wis.2d 274, 514 N.W.2d 34 (Wis. Ct.App. 1994) ..............................................................................8, 14, 16

**Statutes**

MCA § 28-2-703.........................................................................20, 21, 22, 24

MCA § 28-2-704.......................................................................................20

MCA § 28-2-705.......................................................................................20

Wis. Stat. § 103.465 ........................................................................... passim

**Rules**

Fed. R. Civ. P. 56........................................................................................1, 6

**Other Authorities**

Restatement (Second) of Agency § 228 (1958) ...............................................23

Restatement (Second) of Conflict of Laws § 188 (1971) ..................................19

SAVITT & BRUCE LLP
1325 Fourth Avenue Suite 1410
Seattle, Washington 98101-2509
(206) 749-0500

TABLE OF AUTHORITIES - iii

Pursuant to Fed. R. Civ. P. 56, Defendants (collectively "Torrent") hereby move for dismissal of Plaintiffs' Claim Nos. 2, 3, 6, 7, 8, 9, 10 and 14. Torrent submits the following memorandum in support of its motion for partial summary judgment.

## I. INTRODUCTION

This case concerns the right of former employees to continue to work in their chosen field. In an effort to impede this right, and as part of an overarching anticompetitive strategy, Plaintiffs – NFS, the former employer, and Fiserv, Inc., the corporate parent (collectively "Fiserv/NFS" or "Plaintiffs") – are attempting to constrain Defendants by purporting to enforce two form agreements containing improper restrictive covenants. Plaintiffs' case rests upon: (1) a non-competition agreement; and (2) a confidential information and development agreement. There are no material facts in dispute as to the enforceability of these agreements: they are facially invalid and unenforceable under applicable law.

The non-competition agreement consists of four interrelated provisions and it is found within Fiserv's current form of non-qualified stock option agreement. The agreement is governed by Wisconsin law, which is fundamentally hostile to such restrictive covenants. Under Wisconsin law, which varies significantly from Washington law, restrictive covenants are *prima facie* suspect and must be construed in favor of the employee. They are subject to close scrutiny by Wisconsin courts and often invalidated on summary judgment. In short, under binding Wisconsin law, the non-competition agreements asserted by Plaintiffs are invalid and unenforceable.

Plaintiffs attempt to use a second agreement – the confidential information and development agreement – to prevent competition and as a hook to appropriate Torrent's intellectual property in the broadest possible sense. Among other things, Plaintiffs seek to take dominion over Defendants' ideas, regardless of whether they are rendered tangible (*e.g.,*

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(No. C05-1350Z) - 1

SAVITT & BRUCE LLP
1325 Fourth Avenue Suite 1410
Seattle, Washington 98101-2509
(206) 749-0500

a patentable invention) and regardless of whether they were conceived within the scope of employment. Montana law, which governs the confidential information and development agreement, forbids this sort of overreaching attempt to restrain competition.

The Torrent Defendants are fully entitled to continue to work on and develop new products and services – something different from that offered by Plaintiffs – and to move forward to compete on a level playing field. This is in accord with the law, all applicable contracts, and the fundamental public policy in favor of business competition and free-mobility of workers. Plaintiffs, who maintain a monopoly share of the relevant market, are improperly and unlawfully trying to shut down Torrent before it has completed development of its product or been able to fairly compete.

## II. STATEMENT OF FACTS

### A. Plaintiffs.

#### 1. Fiserv, Inc.

Fiserv, Inc. ("Fiserv") is a public company with headquarters in Brookfield, Wisconsin. *See* Declaration of Stephen C. Willey ("Willey Decl.") at ¶¶ 2-7 and Exs. 1-6.

Fiserv, which was formed in 1984, is essentially a holding company; it is comprised of more than one hundred (100) subsidiary companies that provide various data processing and information management system services to a wide-range of customers. *Id.* at Exs. 1 and 5. According to its 2004 10-K filing with the S.E.C., Fiserv represents that its customers include "more than 16,000 financial services providers, including banks, credit unions, financial planners and investment advisers, insurance companies and agents, self-insured employers, leasing companies, lenders and savings institutions." *Id.* at Ex. 1. Fiserv also states that it has client relationships with more than 9,400 financial institutions, including "91

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(No. C05-1350Z) - 2

SAVITT & BRUCE LLP
1325 Fourth Avenue Suite 1410
Seattle, Washington 98101-2509
(206) 749-0500

1    of the top 100 banks." *Id.* at Ex. 6.  Additionally, Fiserv counts more than 2,900 insurance

2    companies among its customers.  *Id.*

3         Fiserv represents that it provides products or services in five functional areas:

4    "account and transaction processing systems, electronic commerce transactions systems,

5    item/back-office systems, operations support, and management information systems."  *See*

6    Willey Decl. at Ex. 3.  Fiserv has approximately 22,000 employees and it has business

7    operations located in the United States, Argentina, Australia, Canada, Columbia, Indonesia,

8    the Philippines, Puerto Rico, Poland, Singapore, and the United Kingdom.  *Id.* at Exs. 1 and

9    2.  On its website (www.fiserv.com), Fiserv represents that it has clients "in more than 60

10   countries," including the United States, Canada, "Asia-Pacific, the Caribbean, Europe and

11   Latin America."  *Id.* at Ex. 2.  In 2004, Fiserv reported revenues in excess of $3.35 billion.

12   *Id.* at Exs. 1 and 6.

13        **2.        National Flood Services, Inc.**

14        National Flood Services, Inc. ("NFS") is a wholly-owned subsidiary of Fiserv.  *See*

15   Willey Decl. at Ex. 7.  On its website (www.nfsmt.com), NFS represents that it "functions as

16   an insurance management organization servicing the insurance industry to support the

17   National Flood Insurance Program (NFIP)."  *Id.*  That is, NFS is a third-party administrator

18   for insurance companies participating in the federally-sponsored "Write Your Own" (WYO)

19   Program – which is under the auspices of FEMA and its National Flood Insurance Program

20   ("NFIP").  *Id.*[1]  NFS provides its flood insurance services to over 16,000 insurance agencies,

21

22

23

         ─────────────────────
24        [1] For additional background concerning this market and the parties, *see* (a) paragraphs 4-8 of
     Torrent's Answer, Affirmative Defenses and Counterclaims [Court Docket No.9] at 16:19 – 18:8,
25   and (b) Torrent's Opposition to Motion to Dismiss [Court Docket No. 18] at 2:8 – 5:23.

26

27   DEFENDANTS' MOTION FOR PARTIAL              SAVITT & BRUCE LLP
     SUMMARY JUDGMENT                           1325 Fourth Avenue Suite 1410
     (No. C05-1350Z) - 3                         Seattle, Washington  98101-2509
                                                        (206) 749-0500

brokers and financial institutions in the United States, Puerto Rico, Guam and the Virgin Islands. *Id.*

Additionally, NFS represents that its services include processing and administration of homeowners insurance. *See* Willey Decl. at Ex. 7. NFS' systems are based on a computer platform consisting of IBM AS/400 mainframes. *Id.* NFS has offices in Kalispell, Montana and Deerfield Beach, Florida. *Id.* According to public information available from Hoovers, Inc. and Yahoo!, NFS has 130 employees and its 2005 revenues are approximately $34.8 million. *Id.* at Ex. 8.

**B. Defendants.**

**1. Torrent Technologies, Inc.**

Torrent Technologies, Inc. is a start-up company; it is a Delaware corporation that was formed in February 2005. *See* Declaration of Travis Pine ("Pine Decl.") at ¶ 4. Torrent is currently developing a state-of-the-art policy processing and claims administration system for use by insurance companies that offer flood insurance through participation in the NFIP's WYO program. *Id.* Torrent maintains a website at www.torrentcorp.com.

**2. Travis Pine.**

Travis Pine is the CEO of Torrent Technologies, Inc. *See* Pine Decl. at ¶ 1. Previously, Pine was employed by NFS in Kalispell, Montana from September 2001 through January 2004. *See* Pine Decl. at ¶ 2. At NFS, Pine was the Vice President of Information Technology. *Id.* Pine resigned from NFS effective January 28, 2005. *Id.* at ¶ 3.

**3. Theresa Johnston.**

Theresa Johnston is the President and COO of Torrent Technologies, Inc. *See* Declaration of Theresa Johnston ("Johnston Decl.") at ¶ 1. Previously, Johnston was employed by NFS in Kalispell, Montana from January 1990 through April 2005. *See*

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(No. C05-1350Z) - 4

Johnston Decl. at ¶ 2.  At NFS, Johnston held several positions, including Account Executive – Client Services, Manager – Service Representatives, Customer Service Manager and Sr. Vice President.  *Id.*  Johnston resigned from NFS effective April 29, 2005.  *Id.* at ¶ 3.

## C.     The Agreements in Restraint of Trade.

### 1.     The Non-Compete Agreement.

The non-compete agreement consists of four interrelated restrictive covenants contained in the current form of the Fiserv, Inc. Employee Non-Qualified Stock Option Agreement.  *See* Pine Decl. at Exs. 1 and 2 and Johnston Decl. at Exs. 1 and 2.

Fiserv and Travis Pine entered into two of these agreements – in 2003 and 2004.  *See* Pine Decl. at Exs. 1 and 2.  Fiserv and Theresa Johnston also entered into two of these agreements – again, in 2003 and 2004.  *See* Johnston Decl. at Exs. 1 and 2.  In each of these agreements, the non-compete is set forth at Section 4(d)(i)-(iv).  *See* Pine Decl. at Exs. 1 and 2 and Johnston Decl. at Exs. 1 and 2; *see also* Appendix A hereto.[2]

### 2.     The Confidential Information and Development Agreement.

The Employee Confidential Information and Development Agreement is a form Fiserv agreement.[3]  *See* Pine Decl. at Exs. 3 and 4 and Johnston Decl. at Exs. 3 and 4.

Fiserv and Travis Pine entered into two of these agreements – in 2001 and 2003.  *See* Pine Decl. at Exs. 3 and 4.  Fiserv and Theresa Johnston also entered into two of these agreements – again, in 2001 and 2003.  *See* Johnston Decl. at Exs. 3 and 4.

---

[2] The text of the non-compete is attached as Appendix A.

[3] Relevant text from the confidential information agreement is attached as Appendix B.

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(No. C05-1350Z) - 5

SAVITT & BRUCE LLP
1325 Fourth Avenue Suite 1410
Seattle, Washington 98101-2509
(206) 749-0500

# III. AUTHORITY AND ARGUMENT

## A. Summary Judgment.

Summary judgment should be granted where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). In this case, there are no material facts in dispute. Both of the agreements can and should be construed by the Court as a matter of law – and invalidated accordingly.

## B. The Fiserv Non-Compete Agreement is Unreasonable and Unenforceable under Applicable Wisconsin Law.

The non-compete agreement expressly states that it "shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflict of law provisions." *See, e.g.,* Pine Decl. at Ex. 1 (at ¶ 9(f)). There is no dispute on this point.

Under Wisconsin law, restrictive covenants – *i.e.*, contracts that restrain trade or competition – are fundamentally disfavored. *Equity Enterprises, Inc., v. Milosch*, 247 Wis.2d 172, 183, 633 N.W.2d 662 (Wis. Ct. App. 2001). "Covenants not to compete are regarded with suspicion by the courts because the law seeks to 'encourage [ ] the mobility of workers.'" *Farm Credit Services of North Central Wisconsin, ACA v. Wysocki*, 243 Wis.2d 305, 312, 627 N.W.2d 444 (Wis. 2001) (citation omitted).

Wisconsin law applies the following canons of construction to any contract that operates to restrain trade or competition:

    (1)    such restrictive covenants are *prima facie* suspect;

    (2)    they must withstand close scrutiny to pass legal muster as being reasonable;

    (3)    they will not be construed to extend beyond their proper import or further than the language of the contract absolutely requires; and

    (4)    they are to be construed in favor of the employee.

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(No. C05-1350Z) - 6

SAVITT & BRUCE LLP
1325 Fourth Avenue Suite 1410
Seattle, Washington 98101-2509
(206) 749-0500

*See, e.g., Mutual Service Cas. Ins. Co. v. Brass*, 242 Wis.2d 733, 625 N.W. 2d 648 (Wis. Ct. App. 2001) (affirming summary judgment in favor of former employee and holding restrictive covenant unenforceable) (citing *Streiff v. American Family Mut. Ins. Co.*, 118 Wis.2d 602, 611, 348 N.W.2d 505 (Wis. 1984)). These canons are grounded in Wis. Stat. § 103.465, which sets forth the law on restrictive covenants:

> A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified time *is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal.* Any covenant, described in this subsection, imposing an unreasonable restraint is illegal, void and unenforceable *even as to any part of the covenant or performance that would be a reasonable restraint.* (Emphasis supplied.)

The Wisconsin Supreme Court has observed that Wis. Stat. § 103.465 "evidences a strong public policy against the enforcement of trade restraints which are determined to be unreasonable upon all employees." *Wysocki*, 243 Wis.2d at 313-14 (citation omitted). In addition to the express requirements of the statute, in order for a covenant not to compete to be enforceable, it must: (1) be necessary for the protection of the employer; (2) provide a reasonable time restriction; (3) provide a reasonable territorial limit; (4) not be harsh or oppressive as to the employee; <u>and</u> (5) not be contrary to public policy. *See NBZ Inc. v. Pilarski*, 185 Wis.2d 827, 840, n.6., 520 N.W.2d 93 (Wis. Ct. App. 1994) (affirming dismissal by trial court and holding non-compete invalid under Wis. Stat. § 103.465).

The construction of a covenant not to compete is a question of law. *Wysocki*, 243 Wis.2d at 312. A court's analysis is focused on "scrutinizing the language of the covenant not to compete." *Id.* at 314. "The standard rules of contract interpretation apply" and "[w]hen the language is unambiguous, we apply its literal meaning." *Id.*

SAVITT & BRUCE LLP
1325 Fourth Avenue Suite 1410
Seattle, Washington 98101-2509
(206) 749-0500

Finally, consistent with the dictate of the statute, Wisconsin courts do not "blue-pencil" restrictive covenants. To the contrary, "[a]ny part of an indivisible covenant, even if reasonable on its own, will not be given effect if any other part is unreasonable." *Mutual Service*, 242 Wis.2d at 742 (citation omitted). Thus, if any part of a restrictive covenant is unreasonable, Wisconsin law renders the entire covenant unenforceable. *Id.; accord Wausau Medical Center, S.C. v. Asplund*, 182 Wis.2d 274, 290, 514 N.W.2d 34 (Wis. Ct. App. 1994) (affirming summary judgment in favor of ex-employee and holding restrictive covenant unenforceable); *JT Packard & Assocs., Inc. v. Smith*, 2005 U.S.Dist. LEXIS 7658 (W.D.Wis. April 25, 2005) (denying motion for preliminary injunction and finding non-compete overbroad); *see also* Wis. Stat. § 103.465.[4]

The *Mutual Service* case is an illustrative example of how Wisconsin courts address non-competes. An insurance company brought a breach of contract action against a former employee, asserting that the former employee had breached his agency contract. 242 Wis.2d at 736. The employee had worked for MSI[5] as an insurance agent from 1993 – 1998. *Id.* at 736. Immediately after terminating his employment with MSI, the former agent began

---

[4] The Wisconsin Supreme Court has noted that, in adopting Wis. Stat. § 103.465, the legislature expressly intended to prohibit courts from re-writing restrictive covenants that contain unreasonable restraint. *Streiff*, 118 Wis.2d at 608. Otherwise employers possessing bargaining power superior to that of employees would be able to "insist upon unreasonable and excessive restrictions, secure in the knowledge that the promise will be upheld in part, if not in full." *Id.* at 608-09 (citation omitted). The Supreme Court also stated that "[a] principal argument against giving effect to reasonable aspects of a restraint is that the employer can fashion ominous covenants which affect the mobility of employees because of their *in terrorem* effect on employees who respect contractual obligations and their effect on competitors who do not wish legal difficulties." *Id.* at 614. The instant litigation, in which Plaintiffs attempt to foreclose competition by a start-up company, illustrates the *in terrorem* principle in action. *See also Equity Enterprises*, 247 Wis.2d at 189, n.5.

[5] The court used "MSI" as a collective reference to the plaintiffs: Mutual Service Casualty Insurance Company, Mutual Service Life Insurance Company, Modern Service Insurance Company, and MSI Insurance Company. 242 Wis.2d at 735.

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(No. C05-1350Z) - 8

working for a competing insurance company, American National Insurance Company, and he "proceeded to contact customers of MSI[.]" *Id.*

The trial court initially granted an *ex parte* restraining order, but then lifted the order on motion of the employee. 242 Wis.2d at 736. Both parties then filed for summary judgment and the trial court entered judgment in favor of the employee, ruling that the non-compete was overbroad in respect to both time and territory. *Id.* The trial court "held that all terms and conditions of the contract that seek to restrict [the former employee] of the activities of the insurance business are as a matter of law unenforceable." *Id.* at 737. The appellate court affirmed, ruling that the non-compete included three restrictive provisions that were overbroad and, therefore, the entire restrictive covenant was unenforceable under Wis. Stat. § 103.465. *Id.* at 740, 745. The three impermissible non-compete provisions in *Mutual Service* are as follows:

> 1.    Section 13.E.(2) of the agency contract provided that the former employee could not "attempt to induce . . . policyholders to lapse, cancel, or replace any insurance contract in force with the [MSI] companies; or furnish any other person or organization with the name of any policyholder of the [MSI] companies so as to facilitate the solicitation by others of any such policyholder for insurance." 242 Wis.2d at 739. The stated penalty for violation of this provision of the non-compete was "forfeiture of all termination compensation that remains unpaid at the time the condition is broken[.]" *Id.*

> 2.    Section 14 of the agency agreement provided that, for a period of one year following termination of employment, the former employee could not "(i) induce or advise any policyholder of the [MSI] companies credited to [the former employee's] account at the date of termination to lapse, surrender or cancel any insurance coverage in force with the [MSI] companies or (ii) solicit any such policyholder to purchase any insurance coverage competitive with the insurance coverages sold by the [MSI] companies." 242 Wis.2d at 739. The stated penalty for violation of Section 14 was same as for Section 13.E.(2). *Id.*

SAVITT & BRUCE LLP
1325 Fourth Avenue Suite 1410
Seattle, Washington 98101-2509
(206) 749-0500

3.     Addendum 3 of the agency contract provided that, for a period of three years following termination of employment, the former employee could not act "as an Agent . . . engage in or be licensed as an Agent, solicitor, representative, or broker or in any way be connected with the property, casualty, health, or life insurance business as a representative of American National Insurance Company[.]" 242 Wis.2d at 740.

The court of appeals found that the geographic limitation stated in Sections 13.E.(2) and Section 14 was overbroad because it extended to *"any MSI policyholders."* 242 Wis.2d at 743 (emphasis in original). The court observed that "[t]his indicated that [the former employee] is to have nothing to do with MSI policyholders, known or unknown, in Wisconsin or anywhere else in the world." *Id.* Additionally, the court found that Section 13.E.(2) – "as written" – would permit MSI to cancel the former agent's termination compensation *"at any time."* *Id.* The court did not accept MSI's argument that there was an implied time limitation of two years and one month, which MSI claimed was "the time in which termination compensation must be paid." *Id.*

Finally, the court found that Addendum 3 was overbroad because it prohibited the former agent from accepting any type of employment with American National. That is, the provision – as written – "indicates, for example, that [the former employee] could not work for American National as a claims adjuster or even as a janitor." *Id.* at 743-44.

In *Equity Enterprises*, the Wisconsin Court of Appeals engaged in an analysis similar to that in *Mutual Service* – and it reversed a jury verdict, finding that the non-compete in question was unenforceable as a matter of law. 247 Wis.2d at 193. One of the issues the court addressed was whether an implied geographical constraint in the form of a "customer list" restriction was permissible. Several months prior the *Equity Enterprises* decision, the Wisconsin Supreme Court held that a non-compete lacking a geographical constraint but

SAVITT & BRUCE LLP
1325 Fourth Avenue Suite 1410
Seattle, Washington 98101-2509
(206) 749-0500

which was "narrowly tailored to a customer" was not "per se invalid." *Wysocki*, 243 Wis.2d at 307.

*Equity Enterprises* concerned a breach of contract claim by an employer against a former employee, alleging breach of a covenant not to compete. The plaintiffs, Equable,[6] sold insurance products and securities and the former employee had been an agent for Equable for approximately fifteen (15) years. 247 Wis.2d at 177-78. The non-compete at issue contained a number of restrictions, including the following:

> For a period of 18 months after termination, the former employee was not permitted to: "[d]o business with any Customer [] with respect to any form of insurance coverage product competitive to that sold or offered by [Equable], or solicit or attempt to solicit any such Customer to do insurance business with a competitor of [Equable]" and he "shall not interfere in any way with the relationship between the Customers and [Equable], nor shall he cause or attempt to cause any Customer of [Equable] to cease doing business with [Equable] or to cause or attempt to cause such Customer to reduce the amount of business done with [Equable]." 247 Wis.2d at 178-79.

> The non-compete defined "Customer" as "any customer of [Equable] or any Related Party with whom Employee transacted business or whom Employee serviced on behalf of [Equable] during any part of Employee's employment." *Id.* at 179.

In overturning a jury verdict and ruling the non-compete unenforceable, the *Equity Enterprises* court found that the non-compete "does not contain any geographical restrictions" and therefore it "fails and the jury finding that it was reasonable is an error of law." 247 Wis.2d. at 186. Specifically addressing the *Wysocki* decision, the court stated that "the 'customer list' restriction in this case is far from being narrowly tailored." 247 Wis.2d. at 186, n.4. In *Wysocki*, the court noted, the restriction prohibited the former employee "from

------

[6] The court collectively referred to the plaintiffs – Equity Enterprises, Inc. and Equable Securities Corp. – as "Equable."

SAVITT & BRUCE LLP
1325 Fourth Avenue Suite 1410
Seattle, Washington 98101-2509
(206) 749-0500

contacting any client he had serviced in the year prior to his separation." *Id.* (citing *Wysocki*,

243 Wis.2d at 314.[7]

> In contrast, the "customer list" restriction in this case prohibits [the former employee] from doing business with any customer of Equable whom [the former employee] serviced at any time during his employment with Equable. <u>This restriction is unreasonable because it would prevent [the former employee] from doing business with a customer he serviced during his first weeks of employment in 1982,</u> who subsequently transferred his or her business to a competitor of Equable. Such an overbroad restriction is invalid because preventing [the former employee] from contacting former Equable customers is not reasonably necessary to protect Equable's legitimate business interests.

247 Wis. 2d at 186, n.4 (emphasis supplied); *see also Hayes Benefits Group of Wisconsin, LLC v. Palmer & Cay of Wisconsin, LLC*, 279 Wis.2d 517, 693 N.W.2d 146 (Wis. Ct. App. 2005) (affirming summary judgment; holding non-compete without geographical restriction not reasonable and narrowly tailored); *Interstate Sealant & Concrete, Inc. v. Schlueter*, 273 Wis.2d 785, 680 N.W.2d 832 (Wis. Ct. App. 2004) (same).

\* \* \*

The restrictive covenants at issue on the instant motion consist of four interrelated provisions, which apply during an employee's term of employment and for "12 months thereafter." *See* Appendix A. None of the provisions contain any geographical scope or restriction. *Id.* At a minimum, at least three of these provisions are facially invalid under

---

[7] *See also Rollins Burdick Hunter, Inc. v. Hamilton*, 101 Wis.2d 460, 304 N.W.2d 752 (Wis. 1981) (holding non-compete not invalid *per se* where "customer list" restriction limited to customers serviced during a period which was the lesser of two years before the employee's termination or the employee's period of employment).

SAVITT & BRUCE LLP
1325 Fourth Avenue Suite 1410
Seattle, Washington 98101-2509
(206) 749-0500

Wisconsin law.[8]  Moreover, as noted above, the invalidity of any one provision necessitates that all provisions of the non-compete be deemed unenforceable.

### 1.  Section 4(d)(i) of the Non-Compete is facially overbroad.

Section 4(d)(i) prohibits an employee or former employee from having contact with:

> (a) "any of the clients of any Fiserv Group Company" for whom the employee (b) "performed any services or had any direct business contact" for the purpose of (c) "soliciting business or inducing such client to acquire any product or service that at any time during the term of this Agreement is [i] provided or [ii] under development by any Fiserv Group Company."

*See* Appendix A.

This provision contains no geographical restriction, but instead an implied "customer list" restriction.  As a threshold matter, the provision has no time restriction on customers.  As with the impermissible provision in *Equity Enterprises*, Section 4(d)(i) of Fiserv's Non-Compete reaches back in time without limit.[9]  It would, for example, prohibit Theresa Johnston from contacting any customer for whom she had performed services over the course of fifteen (15) years of employment with NFS. *As written*, Section 4(d)(i) would prohibit Johnston from contacting a Fiserv customer to whom she provided assistance on a single occasion when she was a customer service representative in 1990.  This sort of restriction is not reasonably necessary to protect Fiserv/NFS' legitimate business interests and is impermissible under Wisconsin law.

---

[8] Defendants' instant motion does not address, but does not waive any arguments regarding, the third provision of the Fiserv non-compete, *i.e.*, Section 4(d)(iii).

[9] In contrast, the "customer list" timing provisions were specific and narrowly tailored in *Wysocki*, 243 Wis.2d at 314 (customers serviced within one (1) year of employee's termination date), and *Hunter*, 101 Wis.2d at 462-63 (customers served no more than two (2) years prior to employee's termination date).

SAVITT & BRUCE LLP
1325 Fourth Avenue Suite 1410
Seattle, Washington  98101-2509
(206) 749-0500

Moreover, the definition of "customer" in Section 4(d)(i) is unduly expansive. It includes not only customers for whom the employee has "performed any services" but it includes any customer with whom the employee has had any "direct business contact." *See* App. A. For example, the Fiserv Non-Compete is not limited to (a) policyholders credited to the employee's account; (b) customers with whom employee has "transacted business;" or, even, (c) customers that the employee "consulted or serviced."[10] The phrase "direct business contact" is not defined anywhere in the Fiserv Non-Compete, but in the context of a restrictive covenant that reaches to any customer of any Fiserv company – *i.e.*, more than 16,000 businesses, including more than 2,900 insurance companies – mere "direct business contact" (as opposed to, say, social contact) is unreasonably broad.[11]

Last but not least, and as a separate matter, the "purpose" aspect of the Section 4(d)(i) contact prohibition is overbroad. Section 4(d)(i) prohibits a former employee from contacting Fiserv customers for the purpose of competing with Fiserv regarding products or services that are *either* provided by any Fiserv Group Company *or* under development by any Fiserv Group Company. *See* App. A. It would, for example, prohibit Travis Pine from

---

[10] See (a) *Mutual Service*, 242 Wis.2d at 739; (b) *Equity Enterprises*, 247 Wis.2d at 179; and (c) *Wysocki*, 243 Wis.2d at 314.

[11] In *Wausau Medical Ctr., S.C. v. Asplund*, 182 Wis.2d 274, 514 N.W.2d 34 (Wis. Ct.App. 1994), an appellate court affirmed a summary judgment invalidating a non-compete between a doctor and his former employer, a medical center. The court noted that customer lists, or patient lists, might constitute a legitimate business interest of an employer under the "customer contact theory" – *i.e.*, "if the employee had such control or influence over the customers that the employer would be able to take the customers away from the employer." 182 Wis.2d at 288. The court ruled that a doctor who was one of many physicians at a medical center "did not have the type of control or influence over his patients so as to use [access to patient lists] for any competitive advantage." 182 Wis.2d at 289. Similarly, the mere fact of any employee's "business contact" with a customer at the some point in the course of a multi-year employment tenure does not create some competitive advantage for the employee – and does not provide the employer a legitimate protectible interest.

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(No. C05-1350Z) - 14

SAVITT & BRUCE LLP
1325 Fourth Avenue Suite 1410
Seattle, Washington 98101-2509
(206) 749-0500

attempting to do business with a Fiserv customer regarding a product or service that he had never sold or worked on, and had no knowledge of, during his employment at NFS, but which product or service was offered by one or the more than 100 other Fiserv companies. Or, even more unreasonably, Section 4(d)(i) – as written – would bar Pine from competing regarding a product or service that was merely under development by one of the more than 100 other Fiserv companies, regardless of whether Pine had any knowledge of the product or service in development.

In *Mutual Service*, the court found the non-compete unenforceable because, *inter alia*, it reached to "any MSI policyholders, known or unknown, in Wisconsin or anywhere else in the world." 242 Wis.2d at 743. So, too, here, this Court should find Section 4(d)(i) of the Fiserv Non-Compete unenforceable because, *inter alia*, the restrictive covenant reaches to prohibit competition regarding "any product or service that . . . is provided or under development by any Fiserv Group Company" (*see* App. A) – whether known or unknown, in Montana or anywhere else in the world.[12]

For the multiple reasons stated above, Section 4(d)(i) of the Fiserv Non-Compete does not comport with Wis. Stat. § 103.465 and is unenforceable as a matter of law.

**2. Section 4(d)(ii) of the Non-Compete is facially overbroad.**

Section 4(d)(ii) prohibits an employee or former employee from having contact with:

> (a) "any of the clients or prospective clients of any Fiserv Group Company" whose (b) "identity or other client specific information [employee] discovered or gained access to as a result of [employee's]

---

[12] Fiserv is comprised of more than 100 companies, in such varied businesses as banking, credit union, mortgage banking, insurance administration and claims processing, retirement plan administration, vehicle financing, credit processing, plastic card fulfillment, image & electronic document management, education services, financial accounting, electronic report management and presentment, to name a few. *See* Willey Decl. at Exs. 3 and 5.

SAVITT & BRUCE LLP
1325 Fourth Avenue Suite 1410
Seattle, Washington 98101-2509
(206) 749-0500

access to any Fiserv Group Company's confidential information" for the purpose of (c) "soliciting or inducing any of such clients or prospective clients" to (d) "acquire any product or service that at any time during the term of this Agreement is provided or under development by any Fiserv Group company from any entity other than a Fiserv Group Company."

*See* App. A.

The "customer list" restriction stated in Section 4(d)(ii) is not, in any way, narrowly tailored and, thus, the restrictive covenant is unenforceable. *See Equity Enterprises*, 247 Wis.2d at 186, n.4. But its infirmity is slightly different than that of Section 4(d)(i). Here, the trigger is not some sort of prior customer "contact," however ill-defined – rather the ostensible restriction is "identity or other client specific information" that is "discovered or gained access to as a result of . . . access to any Fiserv Group Company's confidential information." *See* App. A.

It is plausible that some "client specific information" might be confidential – and should be protected. But unless the information alone satisfies the "customer contact theory" – *i.e.*, that possession of such information gives an employee, or former employee, such control or influence so as to be able to take the customer away from the employer – there is no legitimate protectible interest. *Wausau Medical Ctr.*, 182 Wis.2d at 288. On its face, Section 4(d)(ii) is not reasonably and narrowly tailored in this manner.

Moreover, Section 4(d)(ii) is not limited to some (undefined) "client specific information" that could, conceivably, be so powerful as to allow a former employee to take a customer away from Fiserv. Indeed, Section 4(d)(ii) prohibits contact with a customer, or potential customer, if the mere identity of such customer, or potential customer, is obtained through access to confidential information. While this restriction might seem reasonable in

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(No. C05-1350Z) - 16

SAVITT & BRUCE LLP
1325 Fourth Avenue Suite 1410
Seattle, Washington 98101-2509
(206) 749-0500

the abstract, its overbreadth is evident where the identity of a customer, or potential customer, is not itself confidential information.

By way of pertinent example, the insurance companies that are the target market for NFS – and for Torrent – are all identified and listed on a <u>public</u> website maintained by FEMA. *See* Willey Decl. at ¶ 10 and Exs. 9-11. The listings are detailed and include the names of contact personnel and their phone numbers and email, as well as information regarding the specific states for which a given insurer writes flood insurance. *Id.* Section 4(d)(ii) is flawed and unenforceable in that it attempts to restrain trade by improperly asserting that Fiserv has a protectible business information in information – regardless of whether that information is actually confidential.[13]

Additionally, Section 4(d)(ii) fails because it attempts to reach out and prohibit contact with "potential customers" – not just actual customers. In *Equity Enterprises*, the court held that a non-compete was unenforceable because, *inter alia*, it would restrict the former employee from "doing business with a customer he serviced during his first weeks of employment in 1982, who subsequently transferred his or her business to a competitor[.]" 247 Wis.2d at 186, n.4. Likewise, and with the basic presumption that former customers are potential return customers, Section 4(d)(ii) as written would prohibit Theresa Johnston from doing business with a customer she had serviced during her first weeks of employment with NFS in 1990, who subsequently transferred his or her business away from NFS. A restriction of this breadth "is not reasonably necessary to protect [Fiserv/NFS'] legitimate business interests." *Id.*

---

[13] To prove the point, and Fiserv/NFS' *in terrorem* use of its overbroad restraint of trade agreements, the proposed TRO Fiserv/NFS sought to have entered against Torrent in the preceding litigation would have barred Torrent (a) from attending an industry conference and (b) from having communication with <u>any</u> NFS clients. *See* Willey Decl. at ¶¶ 11-12 and Ex. 12.

SAVITT & BRUCE LLP
1325 Fourth Avenue Suite 1410
Seattle, Washington 98101-2509
(206) 749-0500

Finally, the restrictive covenant of Section 4(d)(ii) is independently infirm for one of the same reasons as Section 4(d)(i). In particular, its reach extends to barring contact with customers for the purpose of competing with respect to "any product or service" of the more than 100 Fiserv companies, regardless of whether the product or service is actually marketed or merely "under development." Again, the provision does not address products or services that an employee actually worked with, or worked on – indeed, the restrained employee's actual knowledge is irrelevant to the expansive breadth of the restriction. Thus, it fails to comply with Wisconsin law. *See, e.g., Mutual Service*, 242 Wis.2d at 743; Wis. Stat. § 103.465.

**3.      Section 4(d)(iv) of the Non-Compete is facially overbroad.**

The third invalid provision of the Fiserv Non-Compete prohibits an employee or former employee from (a) "encourage[ing], induc[ing] or entic[ing] any employee of any Fiserv Group Company" who (b) has "access to or possession of confidential information of any Fiserv Group Company" to (c) "leave any Fiserv Group Company's employment." *See* App. A.

As an initial matter it is important to recognize what Section 4(d)(iv) is *not*. It is not a narrow bar prohibiting an ex-employee from hiring the employees of the former employer. Even if it were such a narrow bar, Wisconsin law would clearly be hostile to it:

> The law [] does not protect against the raiding of a competitor's employees. Rather, it encourages the mobility of workers. So long as a departing employee takes with him or her no more than his or her experience and intellectual development that has ensued while being trained by another, and no trade secrets or processes are wrongfully appropriated, the law affords no recourse.

*Mutual Service*, 242 Wis.2d at 744 (citation omitted); *see also Wysocki*, 243 Wis.2d at 312 ("the law seeks to 'encourage [] the mobility of workers.'") (citation omitted); *cf. Heyde Cos., Inc. v. Dove Healthcare, LLC*, 258 Wis.2d 28, 654 N.W.2d 830 (Wis. 2002) ("no-hire"

SAVITT & BRUCE LLP
1325 Fourth Avenue Suite 1410
Seattle, Washington 98101-2509
(206) 749-0500

provision in agreement between two employers violates Wis. Stat. § 103.465 because it unreasonably restricts employment opportunities of employees).

Section 4(d)(iv) of the Fiserv non-compete is vastly more expansive. It is not restricted to a bar on the wrongful appropriation of trade secrets. Rather, *as written*, it prohibits encouraging any Fiserv Group employee – of whom there are some 22,000 – from leaving their employment with Fiserv for any purpose whatsoever. <u>Thus, for example, if Travis Pine or Theresa Johnston were to encourage the CEO of Fiserv – or any other of the 22,000 employees who might have "access" to confidential information (no actual possession required) – to quit his Fiserv job so as to run for President of the United States, or sign a contract to pitch for the Red Sox, or, even, open a soft-serve ice cream stand, this would violate Section 4(d)(iv).</u> Section 4(d)(iv) of the Fiserv Non-Compete violates Wis. Stat. § 103.465 and is unenforceable as a matter of law.

**C.  The Confidential Information and Development Agreement is Unreasonable and Unenforceable under Applicable Montana Law.**

Fiserv's form Confidential Information and Development Agreement does not specify the applicable law. *See, e.g.*, Pine Decl. at Ex. 3. In a federal question action, where the federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state. *Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996) (citations omitted). Under Washington law, the following are the significant factors governing the choice of law for contracts: "(a) the place of contracting; (b) the place of negotiation of the contract, (c) the place of performance; (d) the location of the subject matter of the contract; (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Mulcahy v. Farmers Ins. Co.*, 152 Wn.2d 92, 101, 95 P.3d 313 (2004) (citing Restatement (Second) of Conflict of Laws § 188 (1971)).

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(No. C05-1350Z) - 19

1  "Additionally, the expectations of the parties to the contract may significantly tip the scales in

2  favor of one jurisdiction's law being applied over another's." *Id.* (citation omitted).

3         The Confidential Information and Development Agreements were entered into by

4  Defendants Pine and Johnston when they were resident in Montana and employed by NFS, a

5  Delaware corporation located in Montana. *See* Pine Decl. at ¶ 9; *see* Johnston Decl. at ¶ 9.

6  The agreements themselves are between, respectively, Pine and Fiserv/NFS and Johnston and

7  Fiserv/NFS. *See* Pine Decl. at Exs. 3 and 4; *see* Johnston Decl. at Exs. 3 and 4.

8         Each of these contracts was executed in Montana by Montana residents. Both Pine

9  and Johnston understood that Montana law would be applicable. *See* Pine Decl. at ¶ 9; *see*

10  Johnston Decl. at ¶ 9. Moreover, at the time that Pine signed the agreement in 2001, he had

11  just signed a collateral agreement with Fiserv providing for application of Montana law. *See*

12  Pine Decl. at ¶ 10 and Ex. 5. Under these circumstances, and applying the factors set forth in

13  Washington's choice of law rules, the governing law for the Confidential Information and

14  Development Agreement is that of Montana.[14]

15         Like Wisconsin, Montana law is actively hostile to restraints on trade. By Montana

16  statute, contracts in restraint of the exercise of a profession or trade are generally void: "Any

17  contract by which anyone is restrained from exercising a lawful profession, trade, or business

18  of any kind, otherwise than is provided for by 28-2-704 or 28-2-705, is to that extent void."

19  *See* MCA § 28-2-703.[15]

20

21         _____

22         [14] For the reasons set forth in Section III.B, *supra.*, the Confidential Information and
   Development Agreement is also unenforceable under Wisconsin law.

23

24         [15] The two exceptions are inapplicable; they allow parties to agree that upon either the sale
   of goodwill of a business or the dissolution of a partnership, one or more of the parties will refrain
25  from carrying on a similar business within a narrow designated area. MCA §§ 28-2-704, 28-2-705.

26

27  DEFENDANTS' MOTION FOR PARTIAL
   SUMMARY JUDGMENT
   (No. C05-1350Z) - 20

SAVITT & BRUCE LLP
1325 Fourth Avenue Suite 1410
Seattle, Washington 98101-2509
(206) 749-0500

1    MCA § 28-2-703 applies to <u>any</u> contract that restrains trade. *State Medical Oxygen*

2    *and Supply, Inc. v. American Medical Oxygen Co.*, 240 Mont. 70, 76, 782 P.2d 1272 (Mont.

3    1989) (affirming summary judgment invalidating non-disclosure agreement); *see also*

4    *Montana Mountain Prods. v. Curl*, 327 Mont. 7, 112 P.3d 979 (Mont. 2005) (non-compete);

5    *Daniels v. Thomas, Dean & Hoskins, Inc.*, 246 Mont. 125, 804 P.2d 359 (Mont. 1990) (share

6    purchase agreement); *O'Neill v. Ferraro*, 182 Mont. 214, 596 P.2d 197 (Mont. 1979) (lease).

7        Montana courts have consistently held that, under MCA § 28-2-703, restrictive

8    covenants will be valid only if they meet a three-part conjunctive test. That is, a restrictive

9    covenant is not permissible unless it is: (1) limited in operation either as to time or place, (2)

10   based on some good consideration, and (3) reasonable, *i.e.*, "it should afford only fair

11   protection to the interests of the party in whose favor it is made, and must not be so large in

12   its operation as to interfere with the interests of the public." *Montana Mountain Prods.*, 327

13   Mont. at 10 (citation omitted).

14       In *State Medical Oxygen*, the Montana Supreme Court analyzed a non-disclosure

15   agreement under MCA § 28-2-703. The plaintiff brought suit against former employees and

16   their new employer (a competitor) to enforce non-disclosure agreements between the plaintiff

17   and the former employees. 240 Mont. at 71-72. Under the terms of the non-disclosure

18   agreements, State Medical employees and former employees could not:

19           *at any time and in any manner* . . . divulge, disclose or communicate to
             any person, firm or corporation . . . any information concerning any
20           matters affecting or relating to the business of [State Medical's] trade
             secrets and/or customer lists. Including without limiting the above, the
21           employee agrees not to divulge any of [State Medical's] customers, the
             prices it obtains or has obtained from the sale of, or at which it sells or
22           has sold, its products, or any other information concerning the business
             of [State Medical], its manner of operation, its plan, processes or other
23           data[.]

24

25

26

27   DEFENDANTS' MOTION FOR PARTIAL              SAVITT & BRUCE LLP
     SUMMARY JUDGMENT                            1325 Fourth Avenue Suite 1410
     (No. C05-1350Z) - 21                        Seattle, Washington 98101-2509
                                                 (206) 749-0500

240 Mont. at 72. The trial court granted summary judgment in favor of the employees, finding that the non-disclosure agreement violated MCA § 28-2-703. *Id.* at 71.

In affirming the trial court, the Supreme Court observed that State Medical's agreement failed the required three-part test because it "did not limit the restrictions as to either time or place and therefore did not meet the first essential criterion." 240 Mont. at 74. For the very same reason, the Fiserv Confidential Information and Development Agreement is invalid under MCA § 28-2-703 – on its face, it does not meet "the first essential criterion."

Section 1 of the Confidential Information agreement prohibits an employee or former employee from:

> disclos[ing] to anyone outside of Fiserv or us[ing] in any way, *either during or after my employment*, any Fiserv confidential information or material, or any information and material received in confidence from third parties by Fiserv. If I leave Fiserv's employ, I will return all Fiserv property in my possession, including all confidential information and other proprietary material such as software, code, drawings, notebooks, reports, Developments, and customer lists.

*See* Appendix B (Section 1; emphasis supplied).

Fiserv's form agreement contains no restriction as to either time or place and it is, therefore, invalid *per se*. There is no "need to proceed any further to determine whether the covenant meets the remaining two criteria."[16] *State Medical,* 240 Mont. at 74.

The Fiserv Confidential Information Agreement is actually much broader than that at issue in *State Medical*. Not only does it attempt to bar, everywhere and for all time, the use of (undefined) "confidential information" – it also purports to appropriate employees' ideas:

---

[16] The agreement also fails the third criterion because it does not, in Section 1 or anywhere else, define "confidential information." This absence leaves the scope of the purported prohibition open and entirely subject to the employer's discretion. This is not "fair protection" of Fiserv's interests and it "impose[s] an unreasonable burden upon . . . the employee [and] the public." *State Medical,* 240 Mont. at 74 (citation omitted).

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(No. C05-1350Z) - 22

> I hereby assign to Fiserv my entire right, title, and interest in any *idea*, invention, design of a useful article (whether the design is ornamental or otherwise), computer program and related documentation, and other work of authorship (collectively, "Developments"), hereafter made or conceived solely or jointly by me, or created wholly or in part by me, whether or not such Developments are patentable, copyrightable, or susceptible to other forms of protection. These Developments will relate to the actual or anticipated Fiserv business or research and development, and shall include any Development that may be suggested by me or result from any task assigned to me or work performed by me for or on Fiserv's behalf.

*See* App. B (Section 4; emphasis supplied).

Notably, in its form agreement, Fiserv actually recognizes the permissible contours of law by providing for the employee's acknowledgement "that the copyright and any other intellectual property right in designs, computer programs, and related documentation, and works of authorship, created *within the scope of my employment*, directly or indirectly, belong to Fiserv by operation of law." *See* App. B (emphasis supplied).[17] But it is Fiserv's effort to reach out beyond an employee's scope of employment and seize their "ideas" – regardless of whether they are rendered tangible – that is impermissible and fails the third criterion of "reasonableness" under Montana law. Further, Section 4 of the Confidential Information Agreement not only applies to ideas, but it reaches out to any "Development" that "*will relate to the actual or anticipated* Fiserv business or research and development." *See* App. B (emphasis supplied). Thus, for example, Fiserv would appropriate Travis Pine's "ideas" if they "will relate" to some "anticipated . . . business or research and development" of any one

---

[17] The common law of agency governs "scope of employment." *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 109 S.Ct. 2166, 2172 n.3 (1989). A three-part conjunctive test defines conduct within the scope of employment: (1) it is the kind of work he/she is employed to perform; (2) it occurs substantially within authorized work hours; and (3) it is actuated, at least in part, by a purpose to serve the employer. *See* Restatement (Second) of Agency § 228 (1958).

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(No. C05-1350Z) - 23

SAVITT & BRUCE LLP
1325 Fourth Avenue Suite 1410
Seattle, Washington 98101-2509
(206) 749-0500

1  of Fiserv's more than 100 companies; Pine's exposure to or knowledge of such "anticipated"

2  Fiserv business is irrelevant.

3        Section 4 is not constrained by "scope of employment." It is not constrained to actual

4  inventions or other tangible items protected by intellectual property law. It is not even

5  constrained by the parameters of an employee's actual knowledge or work experience. The

6  scope of Section 4 goes far beyond "fair protection to the interests of [Fiserv]" and it

7  fundamentally "interfere[s] with the interests of the public" – *i.e.*, the social policies

8  underlying free trade, open and fair competition, and worker mobility. Pursuant to MCA §

9  28-2-703, the Fiserv Confidential Information and Development Agreement is void as a

10  matter of law.

## IV.   CONCLUSION

12        For all the reasons set forth above, and on the basis of the files and pleadings in this

13  matter, the Torrent Defendants respectfully request that the Court grant this motion and

14  dismiss with prejudice Plaintiffs' Claim Nos. 2, 3, 6, 7, 8, 9, 10 and 14. A proposed form of

15  order is submitted herewith.

17  DATED this 15th day of December 2005.

19  **SAVITT & BRUCE LLP**

20  By _____

21      Stephen C. Willey, WSBA #24499

22  Attorneys for Defendants and Counterclaimants
    Torrent Technologies, Inc., Travis Pine, Susanna

23      Pine, Theresa Johnston and Ralph Johnston

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(No. C05-1350Z) - 24

**SAVITT & BRUCE LLP**
1325 Fourth Avenue Suite 1410
Seattle, Washington 98101-2509
(206) 749-0500